UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

COLEEN E. HOOL,

    *Plaintiff*,　　　　　　　　　　CASE NO. 12-CV-10894

v.　　　　　　　　　　　　　　　MAGISTRATE JUDGE CHARLES E. BINDER

COMMISSIONER OF
SOCIAL SECURITY,

    *Defendant*.
_____/

## OPINION AND ORDER[1]

### I.　INTRODUCTION

This is an action for judicial review of Defendant's decision denying Plaintiff's claim for a period of disability and disability insurance benefits ("DIB"). The case is before this magistrate judge pursuant to the parties' consent under 28 U.S.C. § 636(c) and the district judge's order of reference. (Doc. 12.) Pursuant to E.D. Mich. LR 7.1(e)(2), the parties' cross-motions for summary judgment (Docs. 9, 11) will be decided without oral argument.

### II.　ANALYSIS

#### A.　Background

Plaintiff Coleen E. Hool was 51 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 7 at 31.) Plaintiff's employment history includes work as waitress for nine years, a mail clerk or sorter for six years, and a customer service agent for eight years. (Tr.

---

[1] The format and style of this Opinion and Order are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002); Fed. R. Civ. P. 5.2(c)(2)(B); E.D. Mich. Admin. Order 07-AO-030; and guidance promulgated by the Administrative Office of the United States Courts, which can be found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This opinion only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

at 179.) Plaintiff filed the instant claims on May 20, 2010, alleging that she became unable to work on February 28, 2007. (Tr. at 138.) The claims were denied at the initial administrative stages. (Tr. at 66-75.) In denying Plaintiff's claims, the Commissioner considered affective disorders and diabetes mellitus as possible bases for disability. (*Id.*) On August 4, 2011, Plaintiff appeared before Administrative Law Judge ("ALJ") Myriam C. Fernandez-Rice, who considered the application for benefits *de novo*. (Tr. at 12-23, 27-65.) In a decision dated August 29, 2011, the ALJ found that Plaintiff was not disabled. (Tr. at 23.) Plaintiff requested a review of this unfavorable decision on October 3, 2011. (Tr. at 7-11.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on January 26, 2012, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-6.) On February 28, 2012, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

**B.      Standard of Review**

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely

3

because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

### C.     Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*,

4

74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits ("DIB") program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income ("SSI") program of Title XVI, 42 U.S.C. §§ 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.     ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through September 30, 2012, and that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of February 28, 2007. (Tr. at 17.) At step two, the ALJ found that Plaintiff's diabetes, peripheral neuropathy, migraine headaches, anxiety disorder, bipolar disorder, major depressive disorder, and alcohol abuse in remission were "severe" within the meaning of the second sequential step. (*Id*.) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 17-19.) At step four, the ALJ found that Plaintiff could perform her past relevant work as a mail clerk. (Tr. at 21-23.) Alternatively, at step

five, the ALJ found that Plaintiff could perform a limited range of light work. (Tr. at 19-21.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 23.)

### E. Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff was hospitalized for alcohol dependency treatment from April 28, 2007, through May 8, 2007. (Tr. at 204-09.)

On April 12, 2008, Plaintiff sought treatment in the emergency room of Oakwood Hospital and Medical Center for mental health treatment after she attempted suicide by ingesting sleeping pills while intoxicated. (Tr. at 210-26, 227, 257.) From April through September of 2008, and again in 2011, Plaintiff participated in outpatient therapy at the Hegira-Westland Counseling Center. (Tr. at 295, 326-95, 396-421, 434-87.)

Plaintiff was treated by Shehla Yusaf, M.D., from October 2008 through September 2010 (Tr. at 246-314.) At a mental status examination on October 7, 2008, Dr. Yusaf noted that Plaintiff's appearance was age-appropriate and she was well-groomed. (Tr. at 255.) Dr. Yusaf also noted that Plaintiff's motor activity and speech were age-appropriate, her mood was euthymic, her affect was congruent with mood, and her behavioral presentation was cooperative at times but defensive as to "info on drug use." (Tr. at 255.) Plaintiff was oriented as to time, place, and person; her thought process was goal-directed; her thought content was unremarkable; and her intellectual functioning was average and consistent. (Tr. at 255-56.) Plaintiff's memory was noted to be impaired as to concentration regarding recent and immediate topics and her judgment, insight, and impulse control were deemed poor because of "substance abuse repeatedly use[d] to ameliorate migraine headaches and depression." (Tr. at 256.) Dr. Yusaf diagnosed "Major Depressive

7

Disorder, Recurent, Mild" and "Alcohol Dependence, Early Partial Remission"; a GAF score of 50 was assessed. (Tr. at 259.)

Plaintiff was treated by Cecelia Hissong, M.D., from March 2009 through May 2011. (Tr. at 227-45, 422-28.) On October 7, 2009, Dr. Hissong examined Plaintiff's eyes, ears, nose, throat, neck, heart, lungs, legs, feet, and skin, which were all normal. (Tr. at 229-30.) Dr. Hissong noted that Plaintiff had type 2 diabetes mellitus, "Migraine Headaches common not continuous," "Hypercholesterolemia," and "Benign Essential Hypertension." (Tr. at 230-31.) Dr. Hissong continued prescribed medications. (Tr. at 231.) Similarly, on October 21, 2009, Dr. Hissong examined all the areas noted above and all were normal. (Tr. at 233.) Dr. Hissong assessed type 2 diabetes mellitus and migraine headaches and continued prescribed medications. (Tr. at 234.)

On November 4, 2009, Dr. Hissong instructed Plaintiff on how to draw and give herself insulin injections. (Tr. at 235.) On December 22, 2009, Plaintiff complained to Dr. Hissong of "numbness in her feet and pains up and down her legs." (Tr. at 237.) Dr. Hissong prescribed Neurontin. (*Id.*) On March 8, 2010, Dr. Hissong examined Plaintiff and found all to be normal except that the "timpanic membrane is markedly red on the left," causing Dr. Hissong to diagnose otitis media. (Tr. at 238.) On April 6, 2010, Plaintiff complained of headaches; Dr. Hissong examined Plaintiff and found all areas normal except for impacted cerumen in Plaintiff's ears. (Tr. at 241.)

Plaintiff was examined at the request of Disability Determination Services ("DDS") by Terrance A. Mills, Ph.D., L.P., on October 1, 2010. (Tr. at 315-21.) It was noted that Plaintiff's current interests were that she liked to "walk and attend AA activities." (Tr. at 315, 319.) Dr. Mills found that Plaintiff was neatly dressed and groomed, her eye contact was good, she was alert and aware of her surroundings, her speech was spontaneous, logical and focused, she was oriented as

to time, place and person, her affect was appropriate, and her mood was depressed. (Tr. at 316, 320.) Plaintiff indicated that she "hears voices," that she "can't make out what they're saying," that she "hears people walking on her porch," and that she "thinks they are up to something." (Tr. at 316, 320.) Dr. Mills diagnosed "Bipolar Disorder Depressed Moderate with Possible Psychotic Features," "Alcohol Dependence in Partial Remission," "Marijuana Abuse in Partial Remission," and "Panic Disorder"; he assessed a GAF score of 45 to 50 and a prognosis of "fair to good." (Tr. at 317, 321.)

Plaintiff was also examined at the request of the DDS by S. Obri, M.D., on October 1, 2010. (Tr. at 323-24.) Dr. Obri found Plaintiff's ears, nose, throat, lungs, heart, abdomen and extremities to all be normal, non-tender, and with no edema. (Tr. at 324.) Cranial nerves were found to be intact, gait and sensation were intact, there was some decreased sensation to touch and pinprick in the lower extremities, and straight leg raising was normal. (*Id.*) Dr. Obri assessed Plaintiff with "Diabetes," "Diabetic neuropathy," "High triglycerides," "Bipolar disorder," "Elevation of blood pressure with current reading 130/98," and "History of alcohol abuse." (*Id.*)

On December 8, 2010, Dr. Hissong noted that Plaintiff had "very high triglycerides and cholesterol" and thus advised Plaintiff that she had to "change her eating habits" and "increase her fruits and vegetables." (Tr. at 423.) Upon examination, Dr. Hissong found Plaintiff's general condition, eyes, ears, nose, throat, neck, heart, lungs, chest, legs, feet, back, and extremities to all be normal with no tenderness, edema, or complaints of pain, even "with flexion or extension of her hips, knees, elbows, or wrists." (Tr. at 424.) On May 25, 2011, Dr. Hissong's findings were the same as in December 2010; all was found to be normal. (Tr. at 428.)

On May 27, 2011, Dr. Hissong completed a Medical Assessment of Ability to Do Work-related Activities form wherein Dr. Hissong estimated that Plaintiff could stand or walk for about

9

two hours of an eight-hour workday, could stand or walk for twenty minutes without interruption, could sit for eight hours of an eight-hour workday, did not need to elevate her legs, could use her right hands, fingers, and arms for eight hours of an eight-hour workday, and could use her left hands and fingers for twenty minutes and her left arms for eight hours of an eight-hour workday. (Tr. at 431.)

In her daily activity report, Plaintiff stated that she is able to take of her own personal needs, prepare her own meals, do laundry, clean and dust, shop in stores for "about an hour," and handle her finances. (Tr. at 172-74.) Plaintiff also stated that she is able to watch television, crochet, make hooked rugs, socialize on a daily basis, attend AA meetings, and visit with her daughter and sisters. (Tr. at 175-76.)

At the administrative hearing, Plaintiff testified that she lives with her husband in a two-story home but that she sleeps on the main level or "down floor." (Tr. at 31.) Plaintiff indicated that she cannot work because of her "[c]oncentration level, I can't remember things that I read, my carpal tunnel, I have neuropathy in my legs so I can only stand or walk for 20 minutes at a time" and her "migraine headaches," which she suffers from "about three times a month." (Tr. at 37.) Plaintiff testified that she had been diagnosed with bipolar disorder for "[a]bout 10 years[,]" that it had "gotten worse as time goes on," and that she was being treated with prescription medication and a therapy class once a week. (Tr. at 38-39.) At the time of the hearing, Plaintiff was taking Depakote, Cymbalta, Valium, Trazadone, and Ambien for her mental health needs. (Tr. at 40.) Plaintiff stated that she is more often depressed than manic and that she becomes depressed about "five times" in a month. (Tr. at 41.) Plaintiff also testified that she has "panic attacks" when she drives on a freeway or is around people she does not know, but that she does not have them at home. (Tr. at 43.) She stated that when trying to read a book, "I read it and then I'll put it down

and pick it up a couple of days later and then I can't remember what I read . . . [s]o I have to start the book all over again." (Tr. at 44.)

Plaintiff testified that she had a drinking problem in the past but that she has been sober since October 2008; she also stated that she has not smoked marijuana in 30 years. (Tr. at 45-46.) Plaintiff has been on insulin therapy for diabetes since October 2009. (Tr. at 46.) Plaintiff also takes Neurontin for neuropathy in her legs. (Tr. at 47.) Plaintiff, who is right-handed, stated that she has carpal tunnel syndrome in her left hand, but that she was not undergoing any treatment for that condition, although she wore a brace when she worked in a mail room. (Tr. at 47-49.) Plaintiff stated that her migraine headaches sometimes last all day and that she takes Imitrex for this condition. (Tr. at 50.) Plaintiff takes Flexeril for her "lower back" and, when asked whether she has had any treatment on her back, Plaintiff responded, "No, I just went to the doctors and told him that I was having back problems, even sleeping and that it bothers me." (Tr. at 51.) Plaintiff testified that the side effect she experiences from medication is "drowsiness." (Tr. at 51-52.) Plaintiff indicated that she "can sit all day" and could sit for more than two hours without getting up. (Tr. at 52.)

Plaintiff stated that she drives every day to her AA meeting, then she "go[es] to breakfast, and "sometimes I'll go over to my girlfriend's house and just sit and have coffee or I'll go home and watch TV [or] take my nap if I take my drowsy pills." (Tr. at 55.) Plaintiff stated that she can vacuum, dust and do housework. (Tr. at 55-56.)

The ALJ asked the vocational expert ("VE") to consider a person with Plaintiff's background and

> assume a hypothetical individual at the light level, . . . assume that this individual would need to avoid concentrated use of moving machinery or exposure to unprotected heights. Please assume that this individual additionally would need to be employed in work that is limited to simple routine, repetitive tasks.

11

(Tr. at 59.) The VE responded that such a person could perform Plaintiff's past work as a mail clerk. (*Id.*) The VE also testified that such a person could perform the light unskilled jobs of cleaner/housekeeper (1,500 jobs available in Michigan), bakery worker (800 jobs available in Michigan) and electronics worker (1,000 jobs available in Michigan). (Tr. at 59-60.) The ALJ then added a condition to the hypothetical that the individual could only have brief or superficial interaction with the public. The VE responded this condition would not exclude the mail clerk job. (Tr. at 60.) The VE clarified that the mail clerk job required occasional reaching and handling while the other two jobs required frequent reaching and handling. (Tr. at 62.)

  **F.**  **Analysis and Conclusions**

  **1.**  **Legal Standards**

  The ALJ found that Plaintiff was able to return to her past relevant work as a mail clerk. (Tr. at 21-23.) The Commissioner's regulations state that the agency "will first compare our assessment of your residual functional capacity with the physical and mental demands of your past relevant work." 20 C.F.R. § 416.960(b); 20 C.F.R. §404.1560(b). "If you can still do this kind of work, we will find that you are not disabled." 20 C.F.R. § 404.1520(f); 20 C.F.R. § 404.1560(b)(3). "'By referring to the claimant's ability to perform a "kind" of work, [the regulations] concentrate[] on the claimant's capacity to perform a type of activity rather than [her] ability to return to a specific job or to find one exactly like it.'" *Boucher v. Apfel*, No. 99-1906, 2000 WL 1769520, at *7 (6th Cir. Nov. 15, 2000) (quoting *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995)).

  An "ALJ [is] not required to solicit testimony from a VE in reaching his conclusion" that a plaintiff is able to perform her past relevant work. *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010) (citing 20 C.F.R. § 404.1560(b)(2) ("We *may* use the service of vocational experts . . . to help us determine whether you can do your past relevant work[.]") (emphasis in

original); *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) ("The regulations permit an ALJ to use the services of a vocational expert at step four to determine whether a claimant can do his past relevant work . . . .")). Should the ALJ use the services of a VE, the ALJ need only incorporate those limitations into the hypothetical question that he finds credible and supported by the record. *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

Alternatively, the ALJ determined that during the time Plaintiff qualified for benefits, she possessed the residual functional capacity to perform a limited range of light work. (Tr. at 19-21.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I find that the ALJ utilized the proper legal standard in her application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2. Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 9.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833;

*Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

More specifically, Plaintiff contends that the ALJ failed to give proper weight to the opinion and assessment of Plaintiff's treating physician, Dr. Cecelia Hissong, the consultative examiner, Dr. Terrance A. Mills, Ph.D., and the consultative examiner, Dr. S. Obri, whose opinion the ALJ failed to mention. (Doc. 9 at 14-18.) In addition, Plaintiff argues that the evidence of record does not support the ALJ's RFC analysis (*id.* at 18-19) and that the ALJ did not properly assess Plaintiff's credibility and instead "used the 'sit and squirm' test." (*Id.* at 20-21.)

### a. Treating Sources

The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2). If the ALJ declines to give controlling weight to a treating source's opinion, then he must use the following factors to determine what weight the opinion should be given: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson*, 378 F.3d at 544. Where the ALJ "failed to conduct the balancing of factors to determine what weight should be accorded these treating source opinions . . . , [t]his alone constitutes error, as '[a] finding that a treating source medical opinion . . . is not entitled to controlling weight [does] not [mean] that the opinion should be rejected.'" *Cole v. Comm'r of Soc. Sec.,* 652 F.3d 653, 660 (6th Cir. 2011) (quoting *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009)).

A physician qualifies as a treating source if the claimant sees the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. After treating sources, a "nontreating source, who physically examines the patient 'but does not have, or did not have an ongoing treatment relationship with' the patient, falls next along the continuum." *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012) (quoting *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007)). "The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 F. App'x 279, 284 (6th Cir. 2003) (quoting *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987)).

"Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." S.S.R. 96-2p, 1996 WL 374188, at *5 (1996). *See also Rogers*, 486 F.3d at 242. "This requirement is not simply a formality; it is to safeguard the claimant's procedural rights." *Cole*, 2011 WL 2745792, at *4. "[A] failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

15

Here, the ALJ considered Dr. Hissong's medical source statement regarding Plaintiff's ability to work and accepted and incorporated the findings as to physical impairments, but declined to give weight to Dr. Hissong's opinions as to Plaintiff's mental status, i.e., that Plaintiff might miss work more than four days per month and that her ability to give attention and concentration to performing even simple work tasks would be frequently interfered with because of her impairments. (Tr. at 21, 432.) Since Dr. Hissong is not a psychiatrist, the ALJ was entitled to discount his opinion on questions involving more mental rather than physical limitations. 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5) ("we generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist"); *Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 115 (6th Cir. 2008) (opinions outside of a medical source's area of expertise should generally be viewed as deserving less weight than the opinions of other sources in the particular area).

The ALJ expressly considered the opinions of Dr. Mills, the consultative examiner, as to Plaintiff's psychological impairments (Tr. at 21) and although the ALJ did not mention Dr. Obri by name, the ALJ stated that he considered all the medical opinion evidence in making the required findings. (Tr. at 19.) Dr. Obri examined Plaintiff and found her various organs and systems to be normal. (Tr. at 323-24.) Since Dr. Obri's opinions were consistent with the RFC conclusions set forth by the ALJ, I find that any error in failing to specifically mention Dr. Obri's opinion was harmless error.

### b.   Plaintiff's Credibility

When a disability determination that would be fully favorable to a claimant cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the

16

relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health and Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, No. 09-5773, 2011 WL 180789 at *4 (6th Cir. Jan. 19, 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645, at *3 (6th Cir. Feb. 11, 1999). However, "[i]f an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky,* 35 F.3d at 1036.

The social security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; S.S.R. 96-7p. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or, objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.*; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky*, 35 F.3d at 1038-39; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then

17

determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *Id.* Although a claimant's description of his physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," C.F.R. §§ 404.1528(a), 416.929(a), "[a]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded *solely* because they are not substantiated by objective medical evidence." S.S.R. 96-7p, at *1 (emphasis added). Instead, the ALJ must consider the following factors:

(i)   [D]aily activities;

(ii)  The location, duration, frequency, and intensity of . . . pain;

(iii) Precipitating and aggravating factors;

(iv)  The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

(v)   Treatment, other than medication, . . . received for relief of . . . pain;

(vi)  Any measures . . . used to relieve . . . pain.

*Felisky*, 35 F.3d at 1039-40; S.S.R. 96-7p, at *3. Furthermore, the consistency of the evidence, including a claimant's subjective statements, is relevant in determining a claimant's credibility. 20 C.F.R. § 404.1527(c); S.S.R. 96-7p, at *5.

After examining the record evidence, I conclude that substantial evidence supports the ALJ's credibility finding. The ALJ considered the appropriate factors and found that Plaintiff's complaints of disabling pain were not fully credible. (Tr. at 19-22.)

I further find that the objective medical evidence fails to support a finding of disabling physical or mental impairments. As to mental impairments, Plaintiff was consistently found to be oriented as to time, place and person, she was appropriately groomed, her affect was appropriate,

and her thought process, content, and intellectual functioning were average and unremarkable. (Tr. at 255-56, 316, 320.) Dr. Mills indicated that Plaintiff's prognosis was "fair to good." (Tr. at 317, 321.) As to physical impairments, although Plaintiff definitely has impairments, such as diabetes and peripheral neuropathy, Plaintiff's physical examinations consistently resulted in normal and unremarkable findings. (Tr. at 229-30, 233, 238, 241, 323-24, 424, 428.)

In addition, Plaintiff's mental and physical impairments did not require treatment beyond group therapy and prescription medications. Such modest treatment is inconsistent with a finding of disability. *See Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1001 (6th Cir. 2011); *Myatt v. Comm'r of Soc. Sec.*, 251 F. App'x 332, 334-35 (6th Cir. 2007). I therefore conclude that the ALJ's credibility findings were supported by substantial evidence.

    **c.**    **RFC Analysis**

As to the overall RFC analysis, for all the reasons stated above, I further conclude that the hypothetical posed to the VE properly incorporated the limitations found in the RFC assessment and was in harmony with the objective record medical evidence as well as Plaintiff's own statements that she is able to take of her own personal needs, prepare her meals, do laundry, vacuum, dust, shop in stores for "about an hour[,]" handle finances, watch television, crochet, make hooked rugs, socialize on a daily basis, attend AA meetings, visit with her daughter and sisters, go to her girlfriend's house, go out to breakfast, and take walks. (Tr. at 55, 172-76, 315, 319.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). I find that the ALJ's erroneous statement that Plaintiff sleeps on the second floor of her house, rather than the first floor as Plaintiff testified, is of no consequence to the overall analysis and thus constitutes harmless error.

19

## III.     CONCLUSION

For all these reasons, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## IV.     ORDER

In light of the entire record in this case, the Court finds that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 9) is **DENIED**, that Defendant's Motion for Summary Judgment (Doc. 11) is **GRANTED**, and that the findings of the Commissioner are **AFFIRMED**.

|  | s/ 𝕮𝖍𝖆𝖗𝖑𝖊𝖘 𝕰 𝕭𝖎𝖓𝖉𝖊𝖗 |
|---|---|
|  | CHARLES E. BINDER |
| Dated: December 11, 2012 | United States Magistrate Judge |

### CERTIFICATION

I hereby certify that this Opinion and Order was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date:  December 11, 2012                                                       By      s/Patricia T. Morris
                                                                                                    Law Clerk to Magistrate Judge Binder